IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JACOB SLIPAK,  )
                                      ) 2:11-cv-01971-GEB-JFM
          Plaintiff, )
                                      )
     v. ) <u>ORDER</u>
                                      )
BANK OF AMERICA, N.A.; )
RECONTRUST COMPANY, N.A.; and )
DOES 1 through 100, inclusive, )
                                      )
         Defendants. )
_____)

Defendants Bank of America and ReconTrust Co. ("ReconTrust") move for dismissal of Plaintiff's complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6), arguing Plaintiff fails to state a viable claim against them. Plaintiff does not oppose the motion.

**I. LEGAL STANDARD**

"In reviewing the dismissal of a complaint, we inquire whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." <u>Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.</u>, 637 F.3d 1047, 1054 (9th Cir. 2011) (citing <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009)). The material allegations of the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. <u>Al-Kidd v. Ashcroft</u>, 580 F.3d 949, 956 (9th Cir. 2009). However, this tenet "is inapplicable to legal conclusions." <u>Iqbal</u>, 129 S. Ct. at 1949. Further, "[a] pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)). "In sum, for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (internal citation omitted).

## II. REQUEST FOR JUDICIAL NOTICE

Defendants' dismissal motion includes requests that the Court take judicial notice of the following documents recorded with the Placer County Recorder: a Notice of Default and Election to Sell Under Deed of Trust, a Substitution of Trustee, a Notice of Trustee's Sale, and a Trustee's Deed upon Sale. (Defs.' Req. for Judicial Notice ("RJN") Exs. B-E.)

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citation omitted). However, a court may consider matters properly subject to judicial notice. Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Since each of these documents is publicly recorded, they are capable of accurate determination and may be judicially noticed. See W.

1  Fed. Sav. & Loan Ass'n v. Heflin Corp., 797 F. Supp. 790, 792 (N.D. Cal.
2  1992) (taking judicial notice of documents in a county's public record).
3  Therefore, the Notice of Default and Election to Sell Under Deed of
4  Trust, Substitution of Trustee, Notice of Trustee's Sale, and Trustee's
5  Deed upon Sale are judicially noticed.

### III. BACKGROUND

On or about May 17, 2007, Plaintiff obtained a loan for $321,624.00, which was secured by his real property, located at 1081 Landmark Circle, Lincoln, California 95648 (the "Property"). (Compl. ¶ 8; id. Ex. A.)[1] The Deed of Trust on the loan identifies Bank of America as the lender and beneficiary, and PRLAP, Inc., as trustee. Id. Ex. A.

An Assignment of Deed of Trust dated October 12, 2010, substituted ReconTrust as trustee of the Deed of Trust. (Defs.' RJN, Ex. C.) On October 14, 2010, ReconTrust filed a Notice of Default against the Property. Id. Ex. B. On January 20, 2011, ReconTrust filed a Notice of Trustee Sale dated January 20, 2011, which was initially scheduled on February 17, 2011. Id. Ex. D. The Property was sold at a Trustee Sale by ReconTrust to Bank of America on May 4, 2011. Id. Ex. E. On June 13, 2011, Bank of America filed a complaint for unlawful detainer in Placer County Superior Court. (Compl., Ex. C.)

Plaintiff filed the present suit on June 21, 2011, seeking "restitutionary or compensatory damages and . . . a judicial

---

[1] The Deed of Trust, Complaint for Unlawful Detainer, and Home Affordable Modification Program Hardship Affidavit "may be considered" in ruling on Defendants' Rule 12(b)(6) motions, since they are attached to Plaintiff's complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) (stating "material which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion).

3

determination that the mortgage lien alleged to exist against [the Property] is null and void[.]" Id. 34:15-18. Specifically, Plaintiff alleges he "was defrauded by the banking industry who removed all of the equity in Plaintiff's home . . . and convinced him he could afford the grossly inappropriate monthly payments [by telling him] over and over that he could refinance his loan in the future." Id. ¶¶ 6-7. Further, Plaintiff alleges that when he applied for the Making Home Affordable Program modification in April 2009 and again in July 2010, he was given a trial payment period before he was finally denied the modification. Id. ¶¶ 29-31. These allegations form the basis of Plaintiff's fourteen claims alleged against Defendants.

## IV. DISCUSSION

### A. Breach of Fiduciary Duty

Defendants seek dismissal of Plaintiff's breach of fiduciary duty claim, arguing "as a matter of law, Defendants do not owe Plaintiff a fiduciary duty." (Defs.' Mot. 8:10-11.) In California, to state a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship; (2) the breach of that relationship; and (3) damage proximately caused thereby. Roberts v. Lomanto, 112 Cal. App. 4th 1553, 1562 (2003).

"Breach of fiduciary duty is a tort that by definition may be committed by only a limited class of persons." 1-800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568, 592 (2003). As a general rule, "a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." Oaks Mgmt. Corp. v. Superior Court, 145 Cal. App. 4th 453, 466 (2006). Further, loan servicers typically do not have a fiduciary relationship with borrowers. See Linder v. Aurora Loan Servicing, LLC, No. 2:09-cv-03490-JAM-KJM, 2010 WL 1525399, at *5

4

(E.D. Cal. Apr. 15, 2010); <u>Moreno v. Citibank, N.A.</u>, No. C-09-5339 CW, 2010 WL 103822, at *3 (N.D. Cal. Mar. 19, 2010).

Plaintiff's breach of fiduciary duty claim contains the following allegations:

> At all times relevant Defendants created, accepted, and acted in a fiduciary relationship of great trust and acted for and were the processors of property for the benefit of Plaintiff.
>
> Defendants, collectively and individually, further placed themselves in a position of trust by virtue of the expertise represented by and through their employees, representatives, and[/]or agents.
>
> Defendants, and each of them, breached their fiduciary duties owed to Plaintiff as they acted and continued to act for their own benefit and to the detriment of Plaintiff.
>
> Defendants, and each of them, breached their fiduciary duties owed to Plaintiff by placing and negotiating a loan without due care to the best interest of Plaintiff or for the protection of his rights.
>
> Defendants, and each of them, breached their fiduciary duties owed to Plaintiff by informing Plaintiff he would be able to refinance the fixed loan and to not worry about the interest only payment. Plaintiff, relying on Defendants statements, expertise, and knowledge of the industry entered into the loan. . . .

(Compl. ¶¶ 51-56.) These allegations are insufficient to show the existence of a fiduciary relationship between Plaintiff and any Defendant. See <u>Pajarillo v. Bank of Am.</u>, No. 10CV937 DMS (JMA), 2010 WL 4392551, at *5 (S.D. Cal. Oct. 28, 2010) (dismissing a breach of fiduciary claim based upon similar allegations to those pled in this case). Therefore, this portion of the motion is granted, and Plaintiff's breach of fiduciary duty claim is dismissed.

### B. Breach of the Covenant of Good Faith and Fair Dealing

Defendants also seek dismissal of Plaintiff's breach of the

covenant of good faith and fair dealing tort claim, arguing, *inter alia*, Plaintiff does not have the required "special relationship" with fiduciary characteristics with either Defendant. (Defs.' Mot. 10:22-24.)

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Comunale v. Traders & Gen. Ins. Co., 50 Cal.2d 654, 658 (1958). The implied covenant "rests upon the existence of some specific contractual obligation. [It] is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." Racine Laramie, Ltd. v. Dept. of Parks & Recreation, 11 Cal. App. 4th 1026, 1031 (1992). The implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties'] agreement." McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 799 (2008). Further, "the implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." Id.

Since the implied covenant is based in contract, compensation for its breach is almost always limited to contractual remedies. Foley v. Interactive Data Corp., 47 Cal.3d 654, 684 (1988). Tort remedies are only available when "the parties are in a 'special relationship' with 'fiduciary characteristics.'" Pension Trust Fund v. Fed. Ins. Co., 307 F.3d 944, 955 (9th Cir. 2002)(citing Mitsui Mfrs. Bank v. Superior Court, 212 Cal. App. 3d 726, 730 (1989)). "A central test of whether a lender is subject to this tort is whether there is a fiduciary relationship in which the financial dependence or personal security by the damaged party has been entrusted to the other." Id. (quotations and

citations omitted).

Plaintiff's breach the covenant of good faith and fair dealing claim contains the following allegations:

> [T]here existed an implied covenant of good faith and fair dealing represented by the terms of the FIXED loan, Note, and the Deed of Trust, which imposed upon Defendants a duty of good faith and fair dealing in this matter to safeguard, protect, or otherwise care for the [assets] and rights of Plaintiff. . . .
>
> Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiff when Defendants[:]
>
> 1. Failed to provide all the proper disclosures;
>
> 2. Failed to provide documentation of the loan;
>
> 3. Failed to diligently process Plaintiff's modification;
>
> 4. Failed to provide accurate lending disclosures on the FIXED loan;
>
> 5. Attempted and did place Plaintiff into usurious transactions that any reasonabl[e] mortgage broker or mortgage lender would know would ruin Plaintiff financially, or attempted to profit from servicing these loans when it was obvious that they were entirely illegitimate.

(Compl. ¶ 63.)

However, Plaintiff does not allege the terms of the contract entered into between the parties or how either Defendant's conduct frustrated any of its specific provisions. Further, Plaintiff has not alleged facts supporting the existence of any "special relationship" between the parties, or that they "did all, or substantially all of the significant things that the contract required them to do." (Judicial Council of California Civil Jury Instruction No. 325, Dec. 15, 2009 ed.) Moreover, to the extent Plaintiff's claim is based upon conduct occurring during pre-loan negotiations, the implied covenant does not

7

apply. Therefore, this portion of the motion is granted, and Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dismissed.

### C.  California Business & Professions Code section 17200

Defendants also seek dismissal of Plaintiff's California Business and Professions Code section 17200 ("section 17200") claim, arguing, *inter alia*, "Plaintiff has not adequately alleged any predicate unlawful, unfair, or fraudulent acts and, as such, has not stated a claim under [s]ection 17200." (Defs.' Mot. 15:16-17.)

California's Unfair Competition Law, section 17200, prohibits "unlawful, unfair or fraudulent" business acts and practices. "This cause of action is generally derivative of some other illegal conduct or fraud committed by a defendant, and '[a] plaintiff [. . .] must state with reasonable particularity the facts supporting the statutory elements of the violation.'" Grant v. WMC Mortg. Corp., No. CIV. 2:10-1117 WBS KJN, 2010 WL 2509415, at *4 (E.D. Cal. June 17, 2010) (quoting Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619 (1993)).

Plaintiff's section 17200 claim contains the following allegations:

> Defendants, and each of them, have committed one or more acts of unfair business practices defined by [section 17200] by engaging in acts and practices as alleged above, including but not limited to: continuously making loans without providing borrowers with sufficient, accurate and understandable information regarding the terms and conditions of the loan, making loans in which an underwriter would have never approved due to borrower[']s financial status, and making loans without providing borrowers with sufficient, accurate and understandable information regarding the nature and extent of the financial risk being assumed by the borrowers.

(Compl. ¶ 144.)

1  Plaintiff's section 17200 claim is vague and conclusory.
2 Further, this claim is premised upon the same acts alleged in the other
3 claims in his complaint, all of which fail to state a claim. Therefore,
4 this protion of the motion is granted and Plaintiff's section 17200
5 claim is dismissed.

6     **D.**    **Promissory Estoppel**

7  Defendants also seek dismissal of Plaintiff's promissory
8 estoppel claim, arguing, *inter alia*, Plaintiff fails to allege facts
9 sufficient to state a claim for promissory estoppel. (Defs.' Mot. 18:3-
10 4.) Specifically, Defendants argue "Plaintiff has failed to identify a
11 promise made by any . . . Defendant[] that is 'clear and unambiguous in
12 its terms' [on which] Plaintiff . . . relied . . . to his detriment[.]"
13 Id. 18:17-18.)

14  "Under California law, a plaintiff bringing an action for
15 promissory estoppel must demonstrate: (1) the existence of a promise
16 'clear and unambiguous in its terms;' (2) 'reliance by the party to whom
17 the promise is made;' (3) that any reliance was both 'reasonable and
18 foreseeable;' and (4) that the party asserting the estoppel was injured
19 by his reliance." Krouse v. BAC Home Loans Servicing, LP, 2011 WL 2367
20 at *3 (E.D. Cal. June 9, 2011) (quoting US Ecology, Inc. v. State, 129
21 Cal. App. 4th 887, 901 (2005)).

22  Plaintiff's promissory estoppel allegations claim include "re-
23 alleg[ing] and incorporat[ing]" the preceding paragraphs in his
24 complaint and alleging he "justifiably and detrimentally relied on the
25 false promises, representations and assurances of Defendants." (Compl.
26 ¶¶ 152-53.) However, Plaintiff's allegations are vague and conclusory,
27 since he does not specify promises that are clear and unambiguous in
28 their terms and he does not allege which promises, representations, and

9

assurances are false. Therefore, this portion of the motion is granted and Plaintiff's promissory estoppel claim is dismissed.

### E. Fraud Claims

Defendants also seek dismissal of Plaintiff's fraud-based claims, which comprise fraud by intentional misrepresentation, fraud by concealment, and deceit, arguing, *inter alia*, Plaintiff does not satisfy the pleading requirements of Rule 9(b). (Defs.' Mot. 11:24-26, 18:25-26.)

Rule 9(b)'s heightened pleading standard applies to "averments of fraud" in all civil cases, regardless of whether "fraud" is an essential element of the claim. Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103-05 (9th Cir. 2003). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The required specificity includes the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citation omitted). Further, when alleging fraud against multiple defendants,

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiff[] to differentiate [her] allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. . . . [A] plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.

Id. at 764-65 (internal quotations omitted).

Plaintiff's deceit claim contains the following allegations:
> Defendants made misrepresentation[s] to Plaintiff . . . including but not limited to statements that Defendants would act in Plaintiff's best interest to obtain a loan which would be to Plaintiff's

10

      benefit and to obtain a loan with the best possible term for Plaintiff. . . . Defendant two years later then denied Plaintiff a loan modification on two separate occasions . . . .

      At the time of entering into the note and deed of trust references herein with respect to Plaintiff, [Bank of America] was bound and obligated to fully and accurately disclose:

    1. Who the true lender and mortgagee were[;]

    2. That to induce a Plaintiff to enter into the mortgage, the Defendants caused the appraised value of Plaintiff's home to be overstated[;]

    3. That to disguise the inflated value of Plaintiff's home, the Defendants were orchestrating the over-valuation of homes throughout Plaintiff's community[;]

    4. That to induce a Plaintiff to enter into a mortgage, the Defendants disregarded its underwriting requirements, thereby causing Plaintiff to falsely believe that Plaintiff was financially capable of performing Plaintiff's obligations under the mortgage, when the Defendants knew that was untrue[;]

    5. That [Bank of America] offered Making Home Affordable Program to Plaintiff, however, after over a year of continuous trial payments [chose] to deny the modification, after misleading Plaintiff by informing him that he was approved[;]

    6. That the mortgage would thereby be used as part of a scheme by which the Defendants would bilk investors by selling collateralized mortgage pools at inflated value[;]

    7. That, at the time they did the foregoing, the Defendants knew the foregoing would lead to a liquidity crisis and the likely collapse of the Defendants;

    8. That the Defendants also knew the foregoing would lead to grave damage to Plaintiff's property value and thereby result in the Plaintiff's loss of the equity Plaintiff invested in the Plaintiff's house, as well as damaging the Plaintiff's credit rating, thereby

>                    causing the Plaintiff additional severe
>                    financial damage; and
>
>           9.       That the defendants knew at the time of
>                    making each loan, but did not disclose to
>                    Plaintiff, that entire communities would
>                    become "ghost-town-foreclosure-
>                    communities" after a domino effect of
>                    foreclosures hit them. . . .
>
>     The foregoing is indicative of the Defendants' bad
>     acts. Those bad acts include, but are not limited
>     to:
>           I.    The intentional efforts to frustrate
>                 Plaintiff and other borrowers seeking
>                 information about their mortgages and
>                 loan modifications.
>           II.   Wanton violations of laws designed to
>                 keep un-sourced money out of the United
>                 States real estate market.
>           III.  Intentional violation of Cal. Civil Code
>                 [section] 2923.5 and dilatory steps to
>                 remedy those failures, even when notified
>                 thereof.

(Compl. ¶¶ 69, 73, 109.)

Plaintiff's intentional misrepresentation claim contains the following allegations:

>     The Defendants never disclosed or explained their
>     aggressive business model which was built on making
>     these loans which were destined to become non-
>     performing assets.
>
>     Upon information and belief Defendants' [sic] never
>     made any disclosures in its forms 10-Q or 10-K for
>     2005, 2006, or 2007 about the unprecedented
>     expansion of its underwriting guidelines. Instead,
>     the Defendants made public statements from 2005
>     through 2007 that were intended to mislead
>     Plaintiff about the increasingly aggressive
>     underwriting at the enterprise and the financial
>     consequences of those widened underwriting
>     guidelines.
>
>     Nothing disclosed or provided by the Defendants'
>     [sic] informed Plaintiff that the enterprise
>     included in its prime category loans with FICO
>     scores below 620. Nor did the Defendants inform
>     Plaintiff that the "prime non-conforming" category
>     included loan products with increasing amounts of
>     credit risk . . . . Finally, the Defendants did not
>     disclose that enterprise's riskiest loan product,
>     the Pay-Option ARM, was classified as a "prime

12

loan."

Id. ¶¶ 160-62.

Plaintiff's intentional concealment claim contains the following allegations:

> The Defendants misled borrowers, potential borrowers and investors by failing to disclose substantial negative information regarding the Defendants' loan products, including:
>
> 1. The increasingly lax underwriting guidelines used by the enterprise in originating loans;
>
> 2. The enterprise's pursuit of a "matching strategy" in which it matched the terms of any loan being offered in the market, even loans offered by primarily subprime originators;
>
> 3. The high percentage of loans it originated that were outside its own already widened underwriting guidelines due to loans made as exceptions to guidelines;
>
> 4. The enterprise's definition of "prime" loans included loans made to borrowers with FICO scores well below any industry standard definition of prime credit quality;
>
> 5. The high percentage of the enterprise's subprime originations that had a loan to value ratio of 100%; and
>
> 6. The enterprises' subprime loans had significant additional risk factors, beyond the subprime credit history of the borrower, associated with increased default rates, including reduced documentation, stated income, piggyback second liens, and LTVs in excess of 95%.

Id. ¶ 188.

Plaintiff's "averments of fraud" do not provide the specificity required by Rule 9(b) since they lack sufficient detail concerning the time, date, and place of the alleged misrepresentations and non-disclosures, and the identity of the individuals who made them. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125-27 (9th Cir. 2009) (holding that allegations concerning false representations and

non-disclosures "are grounded in fraud" and are subject to Rule 9(b)). Further, the majority of Plaintiff's allegations fail to distinguish among the Defendants. Therefore, this portion of the motion is granted, and Plaintiff's fraud by intentional misrepresentation, fraud by concealment, and deceit claims are dismissed.

### F. Predatory Lending Claim

Defendants also argue that Plaintiff's predatory lending claim, which is "based on Cal. Fin. Code [section] 4973(f)(1)[,] is barred by the one-year statute of limitations." Id. 5:8-10. Section 4973(f)(1) prescribes: "A person who originates covered loans shall not make or arrange a covered loan unless at the time the loan is consummated, the person reasonably believes the consumer . . . will be able to make the scheduled payments . . . ." Cal. Fin. Code § 4973(f)(1). "California Code of Civil Procedure § 340 provides a one-year limitation period for statutes such as . . . § 4973 . . . that do not prescribe a different period." DeLeon v. Wells Fargo Bank, N.A., 729 F. Supp. 2d 1119, 1128 (N.D. Cal. 2010). Since "[t]he instant action was filed on [June 21, 2011], more than [four] years after the . . . loan was consummated[,]" Plaintiff's predatory lending claim is dismissed. Id.

### G. Quiet Title

Defendants also seek dismissal of Plaintiff's quiet title claim, arguing, *inter alia*, Plaintiff has not pled his ability to tender the amount of his debt. (Defs.' Mot. 19:16-17.) Under California law, it is well-settled that "a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." Briosos v. Wells Fargo Bank, 737 F. Supp. 2d 1018, 1032 (N.D. Cal. 2010) (citing Shimpones v. Stickney, 219 Cal. 637, 649 (1934)). Therefore, "to maintain a quiet

14

title claim, a plaintiff 'is required to allege tender of the proceeds of the loan at the pleading stage.'" Id. (quoting Velasquez v. Chase Home Fin., LLC, No. C 10-01641 SI, 2010 WL 3211905, at *4 (N.D. Cal. Aug. 12, 2010)); see also Hensley v. Bank of New York Mellon, No. 1:10-CV-1316 AWI SMS, 2010 WL 5418862, at *3 (E.D. Cal. Dec. 23, 2010) (dismissing a quiet title claim where the plaintiff did "not allege that she has tendered, or is able to tender").

Plaintiff does not allege tender as required. Therefore, this portion of the motion is granted, and Plaintiff's quiet title claim is dismissed.

**H.   Rescission/Cancellation of a Void Instrument and Declaratory Relief**

Defendants also seek dismissal of Plaintiff's rescission/cancellation of void instruments claim, arguing, *inter alia,* that "rescission is not a cause of action; it is a remedy." (Defs.' Mot. 21:3-4.) Further, Defendants seek dismissal of Plaintiff's declaratory relief claim, arguing "[this claim] duplicates the same allegations found in other causes of action[,]" and is therefore unnecessary. (Defs.' Mot. 7:24-28.)

Plaintiff premises his rescission/cancellation of a void instrument claim upon his fraud claim which has been dismissed under Rule 9(b). (Compl. ¶¶ 208-16.) Plaintiff premises his declaratory relief claim upon disputed rights and duties under the contract; specifically, the alleged denial of a loan modification and the alleged deficiencies in the initial mortgage. Id. ¶¶ 39-49. However, since Plaintiff has failed to state an underlying claim against Defendants, these claims fail as well. See Ozuna v. Home Capital Funding, No. 08-CV-2367-IEG (AJB), 2009 WL 4544131, at *11 (S.D. Cal. Dec. 1, 2009) (holding

"rescission is not a cause of action, but a remedy" and dismissing rescission claim when no underlying cause of action was stated against the defendant)(citations omitted); Marcelos v. Dominquez, No. C 08-00056 WHA, 2008 WL 1820683, at *11 (N.D. Cal. April 21, 2008) (dismissing claim for rescission and restitution on the ground that "it is not a claim for relief, but rather a remedy"); Lane v. Vitek Real Estate Industries Group, 713 F. Supp. 2d at 1104 (dismissing claim for "declaratory and injunctive relief" where plaintiffs' other claims were dismissed since "declaratory and injunctive relief are not causes of action in and of themselves"). Therefore, Plaintiff's rescission/ cancellation of a void instrument claim and his declaratory relief claim are dismissed.

**I.   Civil Racketeer Influenced and Corrupt Organizations Act ("RICO") Claim**

Defendants also seek dismissal of Plaintiff's civil RICO claim, arguing, *inter alia*, Plaintiff's allegations were not pled with the required specificity. (Defs.' Mot. 22:18.) The Ninth Circuit "applie[s] the particularity requirements of [R]ule 9(b) to [averments of fraud in] RICO claims." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989). Therefore, Plaintiff's fraud allegations in his RICO claim must "identify the time, place and manner of each fraud plus the role of each defendant in each scheme." Id. (internal quotation omitted).

Plaintiff's civil RICO claim contains the following allegations: "In doing the aforementioned acts, Defendants and each of them were participating in and have participated in a scheme of racketeering as that term is defined in RICO[.]" (Compl. 33:23-24.) These allegations are insufficient to state a civil RICO claim.

1 Plaintiff does not allege facts concerning the time, date, and place of
2 the alleged misrepresentations and non-disclosures, the identity of who
3 made them, or the role of each Defendant in the "enterprise." Therefore,
4 Plaintiff's civil RICO claim is dismissed.

      **J.**    **Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act")**

6       Defendants also seek dismissal of Plaintiff's Rosenthal Act
7 claim, arguing, *inter alia*, Plaintiff "does not allege facts that
8 establish that any Defendant is a 'debt collector' under the [Rosenthal
9 Act.]" (Defs.' Mot. 20:14-15.) The Rosenthal Act is designed to
10 "prohibit debt collectors from engaging in unfair or deceptive acts or
11 practices in the collection of consumer debts and to require debtors to
12 act fairly in entering into and honoring such debts . . . ." Cal. Civ.
13 Code § 1788.1(b). A "debt collector" is "any person who, in the ordinary
14 course of business, regularly, on behalf of himself or herself or
15 others, engages in debt collection." Id. § 1788.2(c). Since Plaintiff
16 does not allege that either Defendant is a debt collector as that term
17 is defined in § 1788.2, Plaintiff's Rosenthal Act claim is dismissed.

      **K.**    **California Civil Code §§ 2934a(d)-(e)**

19       Defendants also seek dismissal of Plaintiff's violation of
20 California Civil Code §§ 2934a(d)-(e) claim, arguing "the recorded
21 Substitution of Trustee, which show[s] that ReconTrust was substituted
22 as Trustee[,] . . . authorized [ReconTrust] to act as the trustee under
23 the mortgage deed for all purposes from that date, and the Trustee's
24 Sale conducted by ReconTrust on May 4, 2011[,] was valid." (Defs.' Mot.
25 22:8-12.) Plaintiff alleges in his complaint: "Plaintiff is informed and
26 believes that a Substitution of Trustee was never recorded and thus,
27 PRLAP Inc [sic] is still the trustee." (Compl. ¶ 219.) Further,
28 Plaintiff alleges "California Civil Code Section 2934[a](e) provides as

follows: . . . 'unless a new notice of sale containing the name, street address, and telephone number of the substituted trustee is given pursuant to Section 2924f after execution of the substitution, any sale conducted by the substituted trustee shall be void.'" Id. ¶ 220. However, these allegations are "directly contradicted by judicially-noticeable documents . . . , which plainly demonstrate [ReconTrust] was substituted as trustee[.]" Sato v. Wachovia Mortg., FSB, 2011 WL 2784567, at *9 (N.D. Cal. July 13, 2011). "Once recorded, the substitution shall constitute conclusive evidence of the authority of the substituted trustee or his or her agents to act pursuant to this section." Cal. Civ. Code § 2934a(d) (2010). Therefore, Plaintiff's California Civil Code §§ 2934a(d)-(e) claim is dismissed.

### V. CONCLUSION

For the stated reasons, Defendants' dismissal motion is GRANTED. Plaintiff is granted fourteen (14) days from the date on which this order is filed to file a First Amended Complaint addressing the deficiencies in any dismissed claim.

Plaintiff is warned that a dismissal with prejudice could be entered under Federal Rule of Civil Procedure 41(b) if Plaintiff fails to file an amended complaint within the prescribed time period.

Dated: November 10, 2011

GARLAND E. BURRELL, JR.
United States District Judge

18